IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL ACTION |
| ) | NO. 1:17-CR-229-AT-CMS |
| JARED WHEAT ) | |
| JOHN BRANDON SCHOPP, AND ) | |
| HI-TECH PHARMACEUTICALS, INC ) | |
| _____ ) | |

### MOTION TO DISMISS COUNTS 12, 16, 17 AND 18 OF THE SECOND SUPERSEDING INDICTMENT BECAUSE OF PREINDICTMENT DELAY

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), by and through their undersigned counsel and move this Court to dismiss Counts 12, 16, 17, and 18 of the Second Superseding Indictment based on preindictment delay. For cause, Defendants show the following:

### Introduction

This is an old case. The initial indictment was filed on June 26, 2017 and it alleged wire fraud and money laundering conspiracies and substantive counts involving conduct that allegedly occurred in 2011 and 2012. The Government obtained the indictment less than a month before the expiration of the five-year statute of limitations on these counts.

Three months later, on September 28, 2017, the Government filed a superseding indictment adding nine more counts -- conspiracy to introduce

misbranded drugs into interstate commerce, introduction into interstate commerce of a misbranded drug, conspiracy to manufacture and distribute controlled substances, manufacturing and distributing controlled substances (3 counts), and introducing misbranded drugs into interstate commerce (3 counts.) This conduct allegedly occurred at various times between July 2009 and 2017.

Now, over seven years after the original and first superseding indictment, the Government has filed a second superseding indictment. The second superseding indictment, filed on December 3, 2024, deleted the last three misbranding counts. However, the Government added a fourth manufacturing and distributing controlled substance count (Count 16) as well as one count of conspiracy to introduce adulterated food into interstate commerce (Count 17) and one count of introducing adulterated food into interstate commerce (Count 18). It also changed the dates of the controlled substances conspiracy bringing it into 2019. (Count 12). Finally, the second superseding indictment added sentencing enhancement provisions for allegedly committing offenses while on pretrial release. (Counts 12, 16, 17, and 18). Once again, the second superseding indictment was filed mere days before the statute of limitations on these new charges was to expire.

The conduct at issue in the new counts of the second superseding indictment dates back to 2019. In December 2019, the Government purchased five bottles of

Hi-Tech dietary supplements -- Equibolin, Superdrol, 1-AD, 1-Testosterone, and Androdiol. These are the same products that have been at issue in this case since 2017. Between January 9, 2020 and March 19, 2020, the Government tested the supplements it purchased in 2019. After using multiple testing methods with varying degrees of success, the chemists finally allegedly detected steroids in the products. The Government then kept information about the purchase, the testing of the products, and the results secret for five years. It did not notify the Court, counsel, Mr. Wheat, or Hi-Tech about any of this until after it obtained the second superseding indictment in December 2024.[1] Counsel only received the 2020 lab report in discovery that was provided on December 19, 2024.[2]

This case is set for trial starting July 7, 2025. The Government's theory on the misbranding counts in the superseding indictment (Counts 16, 17, and 18) was that Mr. Wheat and Hi-Tech sold misbranded products because the labels did not state that they contained Schedule III Controlled anabolic steroids. The amounts of steroids at issue in the products involved parts per million.

Defendants have now spent seven years preparing to defend the misbranding counts. This preparation involved engaging experts to defend

---

[1] As reflected in the 2020 lab report, all of the purchased products are now well past their expiration dates.

[2] The underlying work papers of the FDA chemists were not disclosed to counsel until mid-January 2025 in a supplemental discovery production.

3

against the prosecution's misbranding theory and expending of hundreds of attorney and expert hours focused on defending against these charges.

Now, seven months ahead of trial, the Government has completely changed course. The new counts now allege that between 2016 and 2019, Mr. Wheat and Hi-Tech introduced adulterated food into interstate commerce and that Mr. Wheat did so while on pretrial release. The new theory is not that Mr. Wheat or Hi-Tech was spiking their products with anabolic steroids. Instead, the Government now contends that Mr. Wheat "ordered cheap components from Chinese chemical sellers" and then did not follow "good manufacturing practices for dietary supplements." (Doc. 514 at 19 and 20). The new conspiracy count (Count 17) alleges as overt acts, the same conduct that was the basis for the misbranding counts in the second superseding indictment plus the results of the 2020 testing.

Now, with just a few months before trial, the Government's last-minute change requires Mr. Wheat and Hi-Tech to completely revamp their trial preparation. Instead of arguing about trace amounts of steroids in the misbranding counts, Defendants now have to focus on Chinese chemical sellers. These are matters that were not at issue for seven and a half years. As will be explained below, the Government's excessive delay in bringing these new charges violates the due process clause. Counts 12, 16, 17 and 18 must therefore be dismissed.

## Argument

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive preindictment delay." *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). "As articulated in *United States* v. *Lovasco*, 431 U.S. 783 (1977), such claims can prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 563, 103 S. Ct. 2005, 2011 (1983).

The Government knew about the conduct underlying the new counts in the second superseding indictment at the latest, five years ago when it purchased the supplements in December 2019.[3]  Despite this, the Government waited until December 2024 to bring its second superseding indictment.  This preindictment delay violates the due process clause of the Fifth Amendment and as a result, Counts 12, 16, 17, and 18 of the second superseding indictment should be dismissed.

---

[3] The delay subject to due process scrutiny is the time between the crime and the time of the indictment. *See United States v. Reed*, 647 F.2d 849, 852 (8th Cir. 1981).

The Eleventh Circuit has articulated a two-part test to determine whether the due process clause of the Fifth Amendment requires dismissal of an indictment for preindictment delay. The defendant must show "1) the delay caused actual prejudice to the conduct of the defense, and (2) that the delay was a product of deliberate action by the Government designed to gain a tactical advantage." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011)(quoting *United States v. Lindstrom*, 698 F.2d 1154, 1157 (11th Cir. 1983)); *United States v. Marion*, 404 U.S. 307, 324 (1977). "Generally, prejudice will take the form of either a loss of witnesses and/or physical evidence or the impairment of their effective use at trial." *United States v. Comosona*, 614 F.2d 695, 696 (10th Cir. 1980). While the defendant bears the burden of establishing the Government's due process violation by a preponderance of the evidence, once the defendant makes a prima facie showing of actual prejudice and tactical advantage, the burden of going forward with evidence shifts to the Government. *United States v. Garcia*, 74 F.4th 1073, 1096-97 (10th Cir. 2023).

1) <u>Actual prejudice arising from 2020 testing</u>

The Government's preindictment delay has caused actual prejudice to the conduct of the defense because it has resulted in the loss of physical evidence. In December 2019, the Government obtained bottles of five Hi-Tech products -- Equibolin, Superdrol, 1-AD, 1-Testosterone, and Androdiol. Between January 2020

6

and March 2020, samples of each of the products were tested and the tests allegedly showed that the products contained steroids. In 2020, the Government did not make the Court, counsel, Mr. Wheat, or Hi-Tech aware that it had obtained and tested the products. Similarly, it did not share the results. The defendants and their counsel only learned of this testing when the Government filed the second superseding indictment in December 2024. The Defendants only received the test results when the Government turned over discovery on December 19, 2024.

Because the Government waited five years to make the defense aware of the 2020 testing, it has now denied Mr. Wheat and Hi-Tech the opportunity to reliably retest the items tested by the Government. Even assuming that the Government still has the products it tested in 2020, they are no longer in a form that would allow for meaningful testing.

At the Daubert hearing held on December 18, 2020, defense expert Dr. Marvin A. Heuer testified that once a factory seal is broken on a bottle containing dietary supplements, the supplements will begin to degrade. (Doc. 371 at 29). Dr. Heuer explained:

> Degradation happens to raw materials and also happens to finished product and various chemicals. When they're exposed to possible hydrolysis, possible oxidation, possible microbial contamination, possible mold contamination, these chemicals once exposed even to the slightest of any of those items, start to degrade. So if you have a molecule -- here we're looking at androstenediol, which basically

7

> those have four ring structures and oxygen and hydrogen off of them. These are pretty complex structures, and if they're allowed to have hydrolysis or oxidation, things are going to happen. A methyl is going to fall off, a hydrogen could fall off, a ring can break apart. We don't know what the degradation is, but once they're exposed to any of these things, it's possible they're going to degrade to multiple other chemicals that will also be detected or could be detected when examined.

(Doc. 371 at 28-29).

Testing at issue in the Daubert Hearing involved tests conducted on Equibolin, Superdrol, 1-AD, 1-Testosterone, and Androdiol in 2018. These are the same supplements that were purchased by the Government in 2019 and tested in 2020. At the Daubert hearing, Dr. Heuer explained that degradation could be an explanation for some of the seemingly random results that appeared in the testing of the samples at issue in the 2018 testing.

Because the samples that were tested in 2020 have been allowed to degrade for five years, Defendants will not be able to reliably retest the samples. Thus, the physical evidence is essentially lost and Mr. Wheat and Hi-Tech will be deprived of the opportunity to challenge the Government's testing with his own independent testing of the samples. In addition, had the Government brought the testing to Defendants' attention in a timely manner, Mr. Wheat and Hi-Tech could have tested other samples that were produced around the same time to refute the Government's testing or to show that the samples tested by the Government were

outliers. The delay by the Government denied the defense these options. This is actual prejudice stemming directly from the preindictment delay.

The Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendants or in reckless disregard of its probable prejudicial impact upon the defendants' ability to defend against the charges. Current counsel for the Government participated in the December 2020 Daubert hearing and cross-examined Dr. Heuer on the issue of degradation. (Doc. 371 at 69). Thus, in 2020, the Government knew that the samples would degrade and knew that the defendants' expert was on record saying that degradation was a problem with the reliability of testing these products. Instead of sharing the information about the 2020 testing and providing the defense the opportunity to retest the samples, the Government sat on the information for five years. Knowing that the samples would continue to degrade, the Government allowed the degradation to happen before bringing the 2020 test results to anyone's attention.

In 2020, the Government could have disclosed the test results at a time when the samples could have been reliably tested. It chose not to. By waiting five years to supersede the indictment based on the 2020 test results, the Government intentionally sought to gain the tactical advantage of denying the defense a meaningful opportunity to retest the samples. This eliminated an important line of defense that Mr. Wheat and Hi-Tech would have had available to fight the new

9

charges.[4] As a result, the new charges in the second superseding indictment must be dismissed.

> 2) Prejudice arising from last minute change in prosecution theory

Mr. Wheat and Hi-Tech have been prejudiced because, after seven years, the Government has radically changed its theory of prosecution with this second superseding indictment. For the entirety of the case, the Government has alleged that Mr. Wheat and Hi-Tech were spiking their products with steroids. Now, mere months before trial, the Government has decided that Mr. Wheat and Hi-Tech are buying cheap, substandard raw materials from Chinese suppliers and not following correct manufacturing standards. This new theory has upended seven years of defense preparation for trial. Instead of defending against misbranding of pharmaceuticals, Mr. Wheat and Hi-Tech have to now change gears and defend against an adulteration of food theory that could have been brough five years ago.

Mr. Wheat and Hi-Tech have been severely prejudiced by the Government's delayed change in theory. The defense has expended significant resources preparing to fight what has been the Government's theory for seven years. This preparation included, among other things, retaining expert witnesses, expending substantial fees and costs for the expert work, and spending countless attorney

---

[4] Counts 16, 17, and 18 are only within the statute of limitations because of the products purchased in 2019 and tested in 2020.

10

hours to defend against something that is no longer part of the case. Now, with only a few months before trial, the defense must start anew with experts. Since the Government has at the last minute introduced new allegations involving suppliers and substandard manufacturing, Mr. Wheat and Hi-Tech have to expend more funds on new and different experts on a tight pretrial timeline. Moreover, the defense now needs to undertake a factual investigation of the reputation and practices of Chinese suppliers.

The delay by the Government is the product of deliberate action designed to gain a tactical advantage. By waiting five years to bring the new charges, the Government is forcing the defense to scramble to find experts at the last minute and get them up to speed. This forces counsel to spend time and energy on these new issues at the expense of preparation for the rest of the trial. The Government has had five years to gather evidence and prepare the new counts. However, by waiting until now to bring the charges, the Government has sought a tactical advantage of limiting the amount of time that Mr. Wheat and Hi-Tech have to prepare to respond.

WHEREFORE, Defendants respectfully request that the Court set this matter for an evidentiary hearing and grant the motion and dismiss the new counts contained in the second superseding indictment.

Respectfully submitted this 22nd day of January, 2025.

*/s/ Brian Steel*
Brian Steel
Georgia Bar No. 677640
Colette Resnik Steel
Georgia Bar No. 601092
The Steel Law Firm, P.C.
1800 Peachtree Street, N.W., Ste. 300
Atlanta, Georgia 30309
404-605-0023
thesteellawfirm@msn.com
crsteel@msn.com
*Counsel for Defendant Jared Wheat*

*/s/ Arthur W. Leach*
Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
4080 McGinnis Ferry Road, Ste. 401
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

*/s/ Brian Mendelsohn*
Brian Mendelsohn
Georgia Bar No. 502031
Jeffrey L. Ertel
Georgia Bar No. 249966
The Mendelsohn Ertel Law Group LLC
101 Marietta Street, N.W.
Suite 3325
Atlanta, Georgia 30303
(404) 885-8878
Brian@tmelg.com
Jeffrey@tmelg.com
*Counsel for Defendant Jared Wheat*

*/s/ Jack Wenik*
Jack Wenik
One Gateway Center, 13th Floor
Newark, New Jersey 07102
973-639-5221
jwenik@ebglaw.com
Admitted Pro Hac Vice
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

*/s/ Bruce H. Morris*
Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
*Counsel for Defendant Jared Wheat*

*/s/ J. Stephen Salter*
J. Stephen Salter
8975 Pompano Way
Gulf Shores, Alabama 36542
205-585-1776
umstakwit@aol.com
Admitted Pro Hac Vice
*Counsel for Defendant Jared Wheat*