IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. |
| JARED WHEAT, | 1:17-cr-229-AT-CMS |
| Defendant. | |

### ORDER

The Government has filed a Motion to Modify Conditions of Pretrial Release for Jared Wheat ("Motion to Modify"). [Doc. 532]. For the reasons discussed below, I will grant the motion in part and deny it in part.

**I.   BACKGROUND**

On September 28, 2017, a federal grand jury returned a First Superseding Criminal Indictment against Mr. Wheat and his co-defendants. [Doc. 7]. In relevant part, Counts Twelve through Eighteen charged Mr. Wheat and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") with manufacturing and distributing five products—Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol (collectively, "the Products")—in violation of the Controlled Substances Act and the Federal Food, Drug, and Cosmetic Act ("FDCA") because the Products allegedly contained Schedule III controlled anabolic steroids. [*Id.* at 12–16].

1

On October 4, 2017, the Honorable Alan J. Baverman granted Mr. Wheat a $100,00 secured bond, with conditions. [Docs. 21–23]. Among other conditions, Judge Baverman ordered that Mr. Wheat "must not violate federal, state, or local law while on release" [Doc. 22 at 1] and that Mr. Wheat was "prohibited from, directly or indirectly through third parties, manufacturing, distributing or selling adulterated foods or misbranded drugs." [Doc. 22-1 at 1].

Seven years later, on December 3, 2024, a federal grand jury returned a Second Superseding Criminal Indictment ("Second Superseding Indictment") against Mr. Wheat and his co-defendants alleging new criminal conduct that occurred while Mr. Wheat was on pretrial release. [Doc. 514]. Specifically, the Second Superseding Indictment alleges that Mr. Wheat continued to manufacture and distribute the Products through on or about December 18, 2019, and that Mr. Wheat and Hi-Tech did not alter the manufacturing process despite knowing that the Products contained Schedule III controlled anabolic steroids. [*Id.* ¶¶ 37, 45, 63, 65]. In doing so, the grand jury also found probable cause in Counts Twelve, Sixteen, Seventeen, and Eighteen that Mr. Wheat violated 18 U.S.C. § 3147 by committing a felony offense while on pretrial release. [*Id.* ¶¶ 37, 39, 43, 45, 65].

On January 2, 2025, the Government filed the Motion to Modify. [Doc. 532]. In that motion, the Government argues that there is probable cause to believe that Mr. Wheat continued to sell the allegedly adulterated Products while on pretrial

2

release, even though he had already been indicted for that same conduct in 2017. According to the Government, the grand jury's return of the Second Superseding Indictment demonstrates that Mr. Wheat has violated two pretrial release conditions: (1) the standard condition that he not violate federal, state, or local law while on release; and (2) the special condition that he not directly or indirectly through third parties, manufacture, distribute, or sell adulterated foods or misbranded drugs. [Doc. 22 at 1, 4]. The Government states that "[i]t is exceedingly rare for a defendant who allegedly continued to commit the same criminal conduct alleged in an indictment to be permitted to remain on pretrial release." [Doc. 532 at 8]. Nevertheless, the Government states that it is not seeking a revocation of the bond at this time. Rather, it argues that the Court can ensure compliance with the law and adequately protect the community by modifying Mr. Wheat's release conditions by prohibiting further manufacturing or distribution of the Products and issuing a recall for Products already distributed.[1] [*Id.* at 8–9].

Mr. Wheat filed a response brief. [Doc. 533]. Notably, he does not deny that he has continued to sell the Products, which he states "have not changed in any material respect since the original indictment." [*Id.* at 2]. Thus, Mr. Wheat

---

[1] The Government does not argue that Mr. Wheat is a flight risk. *See generally* [Doc. 532]. Indeed, Mr. Wheat has been on pretrial supervision for more than seven years without incident. Thus, the focus of the Motion to Modify is on whether a modification of the pretrial release conditions is necessary to prevent further violations of law and to protect the safety of the community. *See generally* [*id.*].

3

essentially admits that he has continued to engage in the same conduct for which he was indicted. Nevertheless, Mr. Wheat argues that the Government's Motion to Modify should be denied because the Government has not shown that his continued sale of the Products is dangerous or that a recall is necessary to protect the community. [*Id.* at 4]. He points out that at the original bond hearing before Judge Baverman, the Government did not seek (or obtain) an order prohibiting the sale of the Products, and that the delay in seeking this relief belies any argument that the Products are dangerous. [*Id.* at 2, 4]. Mr. Wheat states:

> The Government's claim that modification is necessary to protect the public is undercut by its complete lack of urgency on this issue. The Government purchased the allegedly unsafe products in December 2019 and conducted its testing shortly thereafter. If the Government were truly worried that these products were unsafe, it would have done something -- anything -- during the last five years. Instead of taking action to protect the public from these allegedly unsafe products, it sat on its hands and did nothing. The Government did not report the issue to Mr. Wheat's pretrial services officer. It did not file a motion to revoke bond. It did not file a motion bringing the matter to the attention of the Court. It did not ask FDA to conduct inspections of Hi-Tech. It did not even notify counsel or Mr. Wheat that there might be a concern about what was in the products. Clearly, if this were truly a safety issue, the Government would have done something to "protect" the public. By sitting on its hands for five years, the Government cannot make a straight-faced argument that the products are unsafe and that a bond modification is necessary to protect the public.

[*Id.* at 4–5]. He argues that that in the absence of any showing that the Products are dangerous, the Government has failed to show that any modification of the bond conditions is necessary to ensure the safety of the community. [*Id.* at 7–8].

4

In its reply brief, the Government details what it describes as Mr. Wheat's "repeated efforts to stall the government's investigation into its illegal continued sales of the Products." [Doc. 541 at 5]. The Government explains that just three months after the FDA Forensic Chemistry Center confirmed the presence of Schedule III controlled substances in Hi-Tech's products, the Government served a grand jury subpoena on Hi-Tech seeking sales and manufacturing records postdating the indictment for the Products, in an effort to evaluate any issues related to continued production and distribution of the substances at issue in the case. [*Id.* at 5–6]. Hi-Tech then litigated the validity of the subpoena, which resulted in extensive delays. [*Id.* at 6–7]. After the Court finally ordered compliance with the subpoena, it took Hi-Tech until October 25, 2024 (more than four years after the production deadline set forth in the subpoena) to finally produce the documents. [*Id.* at 7].

With advance permission, Mr. Wheat filed a sur-reply brief in which he provides the Court with a preview of his trial argument, i.e., that there is nothing unsafe about the Products, that it is impossible to create food products that are totally pure and free of any impurities, and that he has not violated any laws by producing and distributing the Products. [Doc. 544]. But more to the point, he argues again that the Government's proposed bond modifications are not narrowly tailored to ensure the safety of the community. *See generally* [*id.*].

5

## II. DISCUSSION[2]

The statute authorizing pretrial release, 18 U.S.C. § 3142, requires that it be conditioned upon the defendant "not commit[ing] a Federal, State, or local crime during the period of release." 18 U.S.C. § 3142(c)(A). Here, Judge Baverman imposed that condition back in 2017 [Doc. 22 at 1], and a grand jury has now found probable cause to believe that Mr. Wheat violated it, as evidenced by the new charges in the Second Superseding Indictment.[3] While Mr. Wheat is presumed innocent of all the charges, the Court cannot ignore the admission in his response brief that he has not changed the formula of the Products since the time he was

---

[2] In its motion, the Government cites repeatedly to the statute governing revocation proceedings, 18 U.S.C. § 3148. The Government argues that the Court should apply a higher standard now than it did initially because Mr. Wheat has engaged in new criminal conduct. *See* [Doc. 532 at 4 (relying on the language of 18 U.S.C. § 3148(b) to argue that the standard should be "***assure*** the safety of the community" rather than "***reasonably assure*** the safety of the community" as set forth in 18 U.S.C.§ 3142(c)(1)(B); Doc. 541 at 2–4 (arguing again in the reply that Section 3148 should govern)]. In the instant motion, however, the Government is expressly ***not*** seeking to revoke Mr. Wheat's bond and has not gone through the usual process for bringing bond violations to the Court's attention. Rather, the Government seeks only to modify the existing conditions. [Doc. 532 at 3–5]. Given the nature of the motion, I will apply the standards of 18 U.S.C. § 3142.

[3] Moreover, Counts Seventeen and Eighteen of the Second Superseding Indictment reflect the grand jury's probable cause finding that Mr. Wheat introduced adulterated food into interstate commerce, in violation of the special condition Judge Baverman imposed prohibiting Mr. Wheat from manufacturing, distributing, or selling adulterated foods. [Doc. 22 at 4].

originally indicted, nor can it ignore his vociferous objection to the Government's demand that he stop manufacturing and distributing the Products.

Wheat's apparent decision to continue selling the Products—without modifying the formula—after he was indicted for selling those same Products demonstrates a disregard for both the law and the conditions of release that Judge Baverman imposed upon him. It is obvious that Mr. Wheat must stop engaging in conduct for which he has now twice been federally indicted. Indeed, the statute would not authorize his release otherwise. *See* 18 U.S.C. § 3142(a)–(c) (authorizing pretrial release on either a bond or on conditions but requiring under both scenarios that the Court prohibit the person from committing a Federal, State, or local crime during the period of release). Accordingly, I will grant the Government's request to modify the conditions of release to include a prohibition on Mr. Wheat manufacturing or distributing the Products. *See* 18 U.S.C. § 3142(c)(3) (authorizing the Court to "amend the order to impose additional or different conditions of release" at any time). This modification is necessary to prevent Mr. Wheat from committing further violations of his conditions of release and from committing further actions for which he may be criminally charged.

The request for a recall of the Products is another matter. While the Court has broad discretion to impose conditions of release that are necessary to reasonably assure the safety of the community, *see* 18 U.S.C. § 3142(c)(1)(B), the Government

7

must present facts justifying the conditions it proposes. Here, the grand jury found probable cause to believe that the Products were adulterated, but there has been no corresponding finding specifically regarding dangerousness. Indeed, the Government concedes in its motion that a product can be considered "adulterated" under the FDCA without evidence that it is "injurious to health." [Doc. 532 at 7 n.1 (citing 21 U.S.C. § 342(a))].

According to Mr. Wheat, the Products have been on the market for years, with no adverse event reports, and the Government does not dispute this assertion. [Doc. 533 at 6]. The Government could have requested a recall of the Products back in 2017, when the bond conditions were originally set. The fact that the Government did not do so calls into question whether the Government has always thought the Products were dangerous or whether this position is new. Nothing in the Motion to Modify or in the Government's reply brief indicates that the Government has any new information regarding dangerousness that has come to its attention in the intervening years. In the absence of such evidence, I conclude that there has not been a sufficient showing that a recall, which I consider to be an extraordinary measure, is necessary to protect the community. Accordingly, the Government's request to modify the conditions of pretrial release to include a recall of the Products will be denied. I will deny it, however, without prejudice to the Government's right to bring the issue to the Court's attention again at a later time, if necessary.

### III. CONCLUSION

For the reasons stated, the Government's Motion to Modify Conditions of Pretrial Release for Jared Wheat [Doc. 532] is **GRANTED IN PART and DENIED IN PART**. The following condition is added to Mr. Wheat's conditions of release:

> **Mr. Wheat is prohibited from manufacturing and/or distributing any of the following products:**
>
> > **Superdrol**
> > **Equibolin**
> > **1-AD**
> > **1-Testosterone**
> > **Androdiol**
>
> **This prohibition includes Mr. Wheat's own actions as well as those taken indirectly through any third party, including Hi-Tech Pharmaceuticals.**

Mr. Wheat is cautioned to take this prohibition seriously and to read the wording broadly. A violation of this term will be viewed as an intentional act of disrespect to the Court.

**IT IS SO ORDERED**, this 7th day of February, 2025.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE

9