IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: |
| | ) | |
| JOHN BRANDON SCHOPP | ) | 1:17-cr-00229-AT-CMS |
| _____ | ) | |

## **MOTION FOR SEVERANCE**

COMES NOW JOHN BRANDON SCHOPP, through counsel, and hereby files this Motion for Severance. In support of this filing, the undersigned shows as follows:

## **PRELIMINARY STATEMENT**

On June 28, 2017, with days to spare before the expiration of the statute of limitations, a grand jury serving in this District returned an Indictment against Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), its owner and chief executive Jared Wheat, and Mr. Schopp, who works in Hi-Tech's Contract Manufacturing arm. The original Indictment alleged that Hi-Tech, Mr. Wheat, and Mr. Schopp conspired to commit wire fraud by e-mailing customers false, fraudulent, and misleading documents and representations "regarding regulatory compliance" at Hi-Tech, beginning in March 2011 until on or about July 17, 2012. (Dkt. 1, ¶¶ 1, 9.) Specifically, the government alleges that Mr. Wheat and Mr. Schopp fabricated and then distributed Certificates of Free Sale, audit certificates reflecting current good manufacturing practices

1

("GMP"), and GMP audit reports. (Dkt. 1, ¶¶ 8, 10, 11.) Two such documents were sent by Mr. Wheat to a customer on July 17, 2012. (Dkt. 1, ¶ 14.) The government further charged Hi-Tech and Mr. Wheat with a money laundering conspiracy supported by five substantive counts totaling over $ 1 million. (Dkt. 1, ¶¶ 15-18.)

Three months later, the government superseded. (Dkt. 7.) The First Superseding Indictment added nine counts and two new conspiracies against Mr. Wheat and his company *alone*, including Conspiracy to Introduce and the Introduction of Misbranded Drugs into Interstate Commerce (Counts X and XI) relating to the alleged presence of the ingredient lovastatin in a Hi-Tech product in 2009 through 2014; Conspiracy to and the Manufacture and Distribution of Controlled Substances (Counts XII through XV) relating to the alleged presence of anabolic steroids in five Hi-Tech products in September 2016 through August 2017; and additional counts of Introducing Misbranded Drugs into Interstate Commerce (Counts XVI through XVIII), mirroring the allegations in Counts XIII through XV relating to anabolic steroids. With the new charges, the government expanded the relevant time frame from approximately sixteen months (March 2011 through July 2012) *to almost nine years*, beginning in 2009 through immediately prior to the First Superseding Indictment.

2

After years of motions practice and on the eve of yet another expiring statute of limitations, the government secured a second superseding indictment, again targeting Mr. Wheat and his company.  (*Cf.* Dkt.  514 (dated December 3, 2024), *with* ¶¶ 37, 43, 45, 65 (newly alleging conduct on December 18, 2019).)  The Second Superseding Indictment levied new charges based on Mr. Wheat's and Hi-Tech's continued sale of products alleged to contain anabolic steroids through at least December 2019 (Count XVI), and introduced a *fourth* theory of conspiracy and related substantive count—that Mr. Wheat and Hi-Tech conspired to and distributed "adulterated food" by failing to comply with good manufacturing practices for those products since September 2016 (Counts XVII and XVIII).[1]  The Second Superseding Indictment thus added *two more years*, for a total of eleven, that may be relevant at trial.

As shown below, by charging Mr. Schopp in the same indictment as Hi-Tech and Mr. Wheat—against whom charges twice have been materially extended in time and amplified in seriousness and complexity—the government has made it impossible for Mr. Schopp to receive a fair trial.  By joining Mr. Schopp in this prosecution targeting Mr. Wheat and his business, the government will subject Mr.

---

[1]  *See* Govt's Trial Br., Dkt. 611, at 2, 8-9 (explaining that the Second Superseding Indictment replaced certain misbranding claims with charges of "adulteration" based on Mr. Wheat's and Hi-Tech's alleged failure to comply with good manufacturing practices, in the government's effort to eliminate litigation about and presentation of evidence regarding the quantity of steroids present in the relevant products).

Schopp to cumulative and prejudicial spillover from decades of evidence relevant to and admissible only against his co-defendants. Mr. Schopp, therefore, should be severed.

## ARGUMENT AND CITATION OF AUTHORITIES

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P 8(b). Rule 14, in turn, permits a district court to grant a severance of defendants if "it appears that a defendant . . . is prejudiced by a joinder." Fed. R. Crim. P 14(a). The Eleventh Circuit has expressed a strong preference that "persons who are charged together should also be tried together, particularly in conspiracy cases," *United States v. Chavez,* 584 F.3d 1354, 1360 (11th Cir. 2009), but Rule 14 is not a "hollow shell." *Id.* at 1360 n.5. Indeed, "there are scores of cases in this circuit in which criminal conspiracies approvingly have served as a basis for joinder . . . , but there are an equal number in which joinder has been disapproved." *See United States v. Glinton*, 154 F.3d 1245, 1251 & n.4 (11th Cir. 1998) (citing cases).

Prejudicial joinder requires severance if there is "a cumulative and prejudicial 'spill over' effect [that] may prevent the jury from sifting through the evidence to make an individualized determination as to each [d]efendant," resulting in

4

"fundamental unfairness." *Chavez,* 584 F.3d at 1360; *United States v. Knowles,* 66 F.3d 1146, 1158 (11th Cir. 1995). Although a movant must demonstrate "compelling prejudice" to secure severance on this basis, *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997), Eleventh Circuit precedent reflects that no single factor is determinative in that assessment. *Cf. United States v. Fernandez*, 892 F.2d 976, 990 (11th Cir. 1989) (finding denial of a Rule 14 motion would have abused the district court's discretion in a three-defendant case involving a single count conspiracy to illegally influence operations of an employee-benefit plan, "where, as here, the charge which originally justified joinder turns out to lack the support of sufficient evidence," and the alleged conspirators used similar but not identical unlawful means to effect their ultimate lawful object—securing a contract), *with United States v. Castro*, 829 F.2d 1038, 1047 (11th Cir. 1987) (finding single defendant facing 62 counts in a 12-defendant, 95-count indictment was improperly joined where the portion of trial relevant to that defendant consumed only ten trial days over six and a half months, leaving him subjected to "extensive" and "compellingly offensive" evidence "relating to crimes in which Castro took no part and of which he had no knowledge"), *withdrawn in part on other grounds in denial of reh'g*, 837 F.2d 441 (11th Cir. 1988). "It is therefore readily apparent that each case must stand on its own facts." *Glinton*, 154 F.3d at 1251. Thus, "[i]n deciding a severance motion, a district court must balance the right of the defendant to a fair trial against the public's

interest in efficient and economic administration of justice." *United States v. Castronuovo*, 649 F. App'x 904, 918 (11th Cir. 2016) (citing *United States v. Alvarez,* 755 F.2d 830, 857 (11th Cir. 1985)).

Severance is necessary in this case because (1) Mr. Schopp can demonstrate specific and compelling prejudice from the quantum and quality of evidence likely to be presented against and by Mr. Wheat and Hi-Tech, which will be applicable and admissible only as to them, thus requiring a complex web of limiting instructions to be issued frequently throughout a lengthy trial; and (2) Mr. Schopp's interest in a fair trial, untainted by the associations a jury will make with Mr. Wheat's and Hi-Tech's alleged recent and historical conduct, is not outweighed by the minimal burden placed on the court and government by trying the narrow counts against Mr. Schopp separately, after an eight-year delay.

I.    ***Mr. Schopp Will Suffer Compelling Prejudice Due to the Spillover Effects from Weeks of Unrelated Evidence Relating to the Fifteen Counts Levied Solely Against Mr. Wheat and Hi-Tech.***

As noted above, Mr. Schopp stands charged in Count I of a conspiracy alleged to have begun in March 2011 through approximately July 2012 relating to the distribution of certain export- and compliance-related documentation to customers. (Second Superseding Indictment, Dkt. 514, ¶¶ 1, 9, 13.)  The conspiracy culminates in Counts II and III, which allege two discrete acts of wire fraud—that is, two e-mails from Mr. Wheat to the same customer.  (Second Superseding Indictment,

6

¶¶ 11, 14.)  On the face of the Second Superseding Indictment and as the evidence will show at trial, Mr. Schopp *did not create, send, forward, receive, or otherwise know about* the e-mails sent by Mr. Wheat that are the foundation of Counts II and III.  (*See id.*)

The relevant law, charged scheme(s), and evidence is not complex for the three counts Mr. Schopp faces, and should not be resource-intensive for the government to present at trial.  Indeed, the gist of the alleged conspiracy and the governing regulatory regime can be distilled to only a few sentences: the Food and Drug Administration requires compliance with GMP but defers certification to others (*see* Second Superseding Indictment, ¶ 8), the FDA will certify export compliance via a Certificate of Free Sale if requested and as resources allow (Second Superseding Indictment, ¶¶ 6-7), and during a concise 16-month period in 2011 and 2012, Mr. Schopp allegedly conspired to send fake documentation on these subjects to clients by e-mail in the course of Hi-Tech's business selling dietary supplements. (Second Superseding Indictment, ¶¶ 3, 10-11.)  Mr. Schopp expects the government will seek to introduce documents relating to Certificates of Free Sale, GMP audit reports, and GMP compliance certificates that were circulated internally among employees of Hi-Tech and/or distributed to customers.[2]  The government, however,

---

[2] Mr. Schopp reserves all rights to challenge the admissibility and manner of introduction of the government's evidence.

is unlikely to present any direct evidence from the time period charged in the indictment—March 2011 through July 17, 2012—of an unlawful agreement between Mr. Schopp and anyone else, much less of Mr. Schopp's contemporaneous knowledge of or intent to participate in a wire fraud scheme involving customer "M.M." Rather, the government's evidence of Mr. Schopp's guilt is circumstantial and "horribly thin." *Cf. United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990) (agreeing with the district court's characterization of the evidence in a case prosecuting five armed robberies when the government presented "no direct evidence that affirmatively demonstrated that Keller had conspired with [his co-defendant] Smith;" rather, the evidence established only that Keller knew Smith and that a car like Smith's was near a bank when it was robbed).

The allegations against Mr. Wheat and Hi-Tech, unfortunately, stand in contrast. As the Court is aware, in September 2017, the government secured its first superseding indictment, adding nine counts and two new conspiracies against Mr. Wheat and his company *alone*. *See* Preliminary Statement, *supra* pages 1-3. Years later, the government secured a second superseding indictment, again targeting Mr. Wheat and Hi-Tech *alone*, adding substantive counts, a new "adulteration" theory, and a *fourth* conspiracy, covering the period from approximately September 2016 through December 18, 2019. *Id.* In its slow barrage against Mr. Wheat and Hi-Tech, the government has directly put in issue *almost eleven years* of their conduct.

8

To prove these separate, protracted, and amplified charges, Mr. Schopp expects the government must introduce (and Mr. Wheat and Hi-Tech may seek to rebut) mountains of evidence regarding, *among other things*, the ownership structure, business of, and financial relationship between various businesses owned by or associated with Mr. Wheat; Mr. Wheat's financial affairs and accounts; complex regulatory schemes, including what constitutes "food," "dietary supplements," "drugs," "adulteration," and "pharmacological effects," among other defined terms and concepts, under the Food and Drug Cosmetic Act, others laws and regulations, and scientific standards; the legal requirements and best practices for the manufacture, packaging, storage, branding, advertising, and distribution of dietary supplements; Hi-Tech's sourcing, manufacture, packaging, storage, branding, advertising, and distribution practices; testing protocols, procedures, and results relating to the allegedly misbranded and/or adulterated products from eight or more chemists and several experts in chemistry, mass spectrometry, and other scientific disciplines; and documents and/or testimony that purport to identify Mr. Wheat's co-conspirators at Hi-Tech for Counts X, XII, and XVII and establish Mr. Wheat's knowledge and intent.

Further, Mr. Wheat, Hi-Tech, the Department of Justice, the Federal Trade Commission, and the FDA have been at odds over Mr. Wheat's and his companies' operations, advertising practices, and development and/or distribution of products

containing allegedly unlawful and dangerous ingredients, *in some cases for decades*.[3]  Mr. Schopp believes the government will notice and seek to introduce this extensive litigation history under Rule 404(b).  Considering the quantum of proof required to prove and defend Mr. Wheat's charges, counsel for the government and Mr. Wheat have represented to the Court that each will need at least two weeks to present their respective cases to the jury—practically none of which will ever mention or relate to Mr. Schopp.

The materially heightened risk of spillover and fundamental unfairness in this case is clear.  On multiple levels, the charges against Mr. Schopp are "not in the same league" as the charges against Mr. Wheat and Hi-Tech.  *See United States v. Pedrick*,

---

[3]  *See, e.g.*, *United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1351 (11th Cir. 2019) (affirming the propriety of the FDA's seizure of a substantial quantity of Hi-Tech products containing "DMAA"), *on appeal from* No. 1:13-cv-03675-WBH (N.D. Ga.); *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.,* 786 F. App'x 947, 950-51 (11th Cir. 2019) (affirming the district court's order of contempt and entry of sanctions relating to longstanding litigation initiated by the government regarding advertised weight- and fat-loss benefits of certain Hi-Tech dietary supplements), *on appeal from* No. 1:04-cv-03294-CAP (N.D. Ga.); Superseding Indictment, *United States v. Wheat*, No. 1:06-cr-382-JTC (N.D. Ga. March 26, 2008) (46-count superseding indictment against Mr. Wheat, certain employees of Hi-Tech, and affiliated companies alleging, *inter alia*, conspiracy, a continuing criminal enterprise, adulteration/misbranding, importation of controlled substances, and wire fraud related to operation of a manufacturing and distribution facility in Belize), ECF No. 567; Complaint, *United States v. Hi-Tech Pharmaceuticals, Inc.*, No. 1:03-cv-2789 (N.D. Ga. Sept. 16, 2003) ECF No. 1 (action filed by the United States Department of Justice, Civil Division, seeking permanent injunctive relief relating to the alleged distribution of misbranded and unapproved drugs).

181 F.3d 1264, 1273 (11th Cir. 1999) (holding the district court did not abuse its discretion in finding that the defendant therapist Pedrick suffered "compelling prejudice" and granting her a new trial based on the need for severance because upon reviewing the evidence, her role was "minor" compared to her co-defendant physician-owners; there was no direct evidence of Pedrick's knowledge about either the billing codes or the physician-owners' financial activities; and the evidence introduced on the drug dispensation and money laundering charges "had nothing to do with [her]"); *United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir. 1987) (finding the district court abused its discretion in failing to grant the defendant's severance motion where the jury was "deluged with testimony" concerning "overly prejudicial" drug operations unrelated to the loansharking and bookmaking conspiracies he faced), *overruled on other grounds by United States v. Watson*, 866 F.2d 381 (11th Cir. 1989).

Similar to *Pedrick,* the evidence at trial will show that Mr. Schopp manages a discrete segment of Hi-Tech's business that contracts to produce products *for other companies* according to *those companies' specifications*—not the products complained about in the indictments.  He is not an owner at Hi-Tech.  During the eleven years complained about in the indictment, he never held an executive role or had operational control outside of the Contract Manufacturing division.  He has no responsibility for the product development, procurement, and quality control

11

functions complained about in the indictments, nor the sale or distribution of the allegedly misbranded or adulterated products. Thus, if the government persuades a jury that Mr. Schopp committed the offenses described in Counts I through III, at best the proof could reflect his role and culpability is "minor," facially and by comparison to the alleged involvement of Mr. Wheat and Hi-Tech. *Pedrick*, 181 F.3d at 1271 (upholding the district court's finding of compelling prejudice and affirming the order granting a new trial, where the evidence against the movant was "minimal" and "not like the overwhelming and vivid evidence against [her co-defendant], and there was "considerable direct evidence that [she] did not prepare or submit any bills to the government programs, did not know about CPT codes, never claimed to have provided psychotherapy, and had only limited managerial responsibilities over SDPM's clinical services").

Further, as in *McLain*, Mr. Schopp stands to be "deluged" by documentary and testimonial evidence covering *years* of Mr. Wheat's and Hi-Tech's alleged conduct that is wholly irrelevant to Mr. Schopp's alleged actions, which principally relate to a Certificate of Free Sale sent to a contract manufacturing customer *nearly fifteen years ago*.[4] Thus, as merely one example of the prejudice Mr. Schopp faces despite his limited scope of responsibilities at Hi-Tech and the relatively narrow

---

[4]  The incident underlying the government's allegations of "false, fraudulent, or misleading FDA Certificates of Free Sale" is time-barred, hence the government's pursuit of it as part of the conspiracy in Count I.

window of time relevant to Counts I through III, the jury will hear days—if not weeks—of testimony regarding alleged operational deficiencies at Hi-Tech prior to indictment through as late as 2019. The government has stated that Dr. Cara Welch will be offered as an expert in FDA's regulation of dietary supplements and dietary supplement GMP. More specifically, Dr. Welch appears ready to testify that the manufacturing operations at Hi-Tech "demonstrate significant systemic deviations from the CGMP regulations," at least in connection with her review of documentation relating to the five Hi-Tech products at issue in Counts XII through XVIII if not more broadly. (May 2, 2025 Statement of Testimony from Cara Welch to Nathan Kitchens & Kelly Connors.) Hi-Tech's alleged operational issues—either previously litigated, *see supra* note 3, or arising in connection with Hi-Tech's branded products—should not be admitted against Mr. Schopp, but inevitably will taint the jury's consideration of those three charges, which reference GMP but are premised on the creation of fraudulent documents. At a minimum, Mr. Schopp would be entitled to a limiting instruction with respect to some or all of Dr. Welch's evidence, but the Court cannot expect a jury to dissect her testimony to this extent in real time, especially in a complicated case spanning weeks where similar instructions will be given time and again for witnesses and documents alike. Regardless of the Court's limiting and substantive instructions, the jurors will associate Mr. Schopp with Mr. Wheat's and Hi-Tech's broader issues, which will

significantly undermine Mr. Schopp's right to a fair trial. *See Castro*, 829 F.2d at

1046 (citing *Krulewitch v. United States,* 336 U.S. 440, 454 (1949) (Jackson, J.,

concurring) (referring to fact that jurors "are ready to believe that birds of a feather

flock together")).

### II.    *The Modest Burden of a Short, Separate, and Streamlined Trial Does Not Overcome Mr. Schopp's Fundamental Right to a Fair Trial.*

The public's interest in the "efficient and economic administration of justice,"

*Castronuovo*, 649 F. App'x at 918, is light and continually has eroded in this case.

This matter has been pending for nearly eight years.  The charges against Mr. Schopp

do not require a lengthy parade of witnesses attending trial from far-flung locations,

nor costly and time-intensive experts.  At a summary level,[5] the government simply

must prove that the documentation transmitted to certain Hi-Tech customers

(1) either induced or were otherwise material to the actual or anticipated transaction;

(2) was fabricated; and (3) Mr. Schopp knowingly and with intent agreed with Mr.

Wheat to commit wire fraud.  The modest burden of a short, separate trial conducted

with a substantially pared back exhibit and witness lists, without regular interruption

due to the issuance of critical and numerous limiting instructions, likely after the

---

[5] This summary merely reflects how the elements and evidence overlaps in the government's prosecution of the conspiracy to commit wire fraud and substantive wire fraud counts.  Mr. Schopp does not in any way suggest or concede that this formulation is determinative of the burden of proof or, for instance, appropriate, as a jury instruction.

14

government fully rehearses with Mr. Wheat and Hi-Tech, does not overcome Mr. Schopp's fundamental right to a fair trial. Put differently, Mr. Schopp should not be forced to sit *for weeks* before a jury hearing voluminous, potentially offensive, and unrelated evidence of Mr. Wheat's and Hi-Tech's allegedly illegal acts when Mr. Schopp's case can be resolved separately with acute efficiency.

## CONCLUSION

To honor Mr. Schopp's right to a fair trial before an impartial jury under the Constitution and by applying the aforementioned precedent, the Court should exercise its discretion to sever Mr. Schopp for trial.[6]

Respectfully submitted this 18th day of August, 2025.

> */s/ W. Carl Lietz, III*
> W. Carl Lietz, III
> Georgia State Bar No. 452080
> ATTORNEY FOR BRANDON SCHOPP

Finch McCranie, LLP
229 Peachtree Street, NE
Suite 2500

---

[6] As of the date of this filing, the government has not provided its witness or exhibit lists, nor has it provided notice of the evidence it intends to introduce under Rule 404(b). Although Mr. Schopp does not know the complete universe of evidence that will be admitted, he submits that he has made the requisite showing of compelling prejudice based on the disparate charges, disparate time periods, and disparate quantity and quality evidence relevant to him versus Mr. Wheat. Mr. Schopp reserves the right to seek supplementation or renewal of this motion to sever, if necessary, once the government has made the aforementioned disclosures. *United States v. Kopituk*, 690 F.2d 1289, 1316 (11th Cir. 1982) (noting that the trial court has a "continuing duty at all stages of the trial to grant a severance if prejudice does appear") (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

15

Atlanta, Georgia 30303
404-658-9070; Fax 404-688-0649
carl@finchmccranie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated: August 18, 2025   <u>*/s/ W. Carl Lietz, III*</u>
           W. Carl Lietz, III
           Georgia State Bar No. 452080
           ATTORNEY FOR BRANDON SCHOPP

Finch McCranie, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
404-658-9070; Fax 404-688-0649
carl@finchmccranie.com