IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION |
| | ) | NO. 1:17-CR-229-AT-CMS |
| JARED WHEAT, | ) | |
| JOHN BRANDON SCHOPP, AND | ) | |
| HI-TECH PHARMACEUTICALS, INC. | ) | |
| _____ | ) | |

## DEFENDANTS JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S MOTION TO DISMISS FOR PERSISTENT, CONSISTENT, AND FLAGRANT PROSECUTORIAL MISCONDUCT

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), by and through their undersigned counsel and respectfully requests that the Court dismiss the indictment because of repeated acts of prosecutorial abuse and misconduct.  For cause, Defendants show the following:

This case began over eight years ago, in June 2017, when the Government obtained its initial indictment which alleged wire fraud and money laundering conspiracies and substantive counts involving conduct that allegedly occurred in 2011 and 2012. The Government obtained the indictment less than a month before the expiration of the five-year statute of limitations on these counts.

Then in September 2017, before Mr. Wheat was even arrested, the Government filed a superseding indictment adding nine more counts  -- conspiracy to introduce misbranded drugs into interstate commerce, introduction

into interstate commerce of a misbranded drug, conspiracy to manufacture and distribute controlled substances, manufacturing and distributing controlled substances (3 counts), and introducing misbranded drugs into interstate commerce (3 counts.)  This conduct allegedly occurred at various times between July 2009 and 2017.

Then, over seven years after the original and first superseding indictments, the Government filed a second superseding indictment. The second superseding indictment, filed on December 3, 2024, deleted the last three misbranding counts. However, the Government added a fourth manufacturing and distributing controlled substance count (Count 16) as well as one count of conspiracy to introduce adulterated food into interstate commerce (Count 17) and one count of introducing adulterated food into interstate commerce (Count 18).  It also changed the dates of the controlled substances conspiracy bringing it into 2019. (Count 12). Finally, the second superseding indictment added sentencing enhancement provisions for allegedly committing offenses while on pretrial release. (Counts 12, 16, 17, and 18).

Once again, the second superseding indictment was filed mere days before the statute of limitations on these new charges was to expire.  With the second superseding indictment, the Government abandoned the misbranding theory that it had travelled on for seven years and came up with an entirely new theory of

prosecution involving introducing adulterated food into interstate commerce in part because Defendants allegedly used "cheap" Chinese raw materials.

Now, nine months after changing horses on its theory of prosecution and forcing Defendants to jettison seven years of preparation to start anew to defend against a new theory of prosecution, the Government has conceded that it is unable to prove any of the steroid counts in the indictment, including all of the ones added in the second superseding indictment.

While Defendants are pleased that the Government has finally acknowledged that the Defendants are not guilty of violating the law with regard to the "anabolic steroid products," this action by the Government is part of a persistent pattern of misconduct that the Government has employed to gain a strategic advantage, financially harm the Defendants, and avoid complying with rules and orders in a complete and timely manner. Things have now come to a point with the Government's flagrant, repeated, and consistent misconduct that the Court should dismiss the indictment.

The following is an outline of the many instances of deliberate Governmental actions that were taken to either gain a strategic advantage or to weaponize this prosecution to intentionally cause financial harm to Defendants:

- On the day of Mr. Wheat's arrest, FDA agents seized truckloads of DMAA products from Hi-Tech. The DMAA products were not part of

the indictment, did not contain controlled substances, and were not illegal to possess. At the time, the FDA was trying to stop companies from selling DMAA and the Government used this case as leverage to further FDA policy. By insisting on a bond condition to prevent Defendants from selling DMAA products, the Government used this prosecution to bully Hi-Tech on DMAA. (Doc. 19). After several months, the Government conceded that it had to return the DMAA products that it seized, but because of the bond conditions, Defendants were not able to do anything with the products once they were returned. This resulted in a multi-million dollar loss to the Defendants.

- The Government has obtained three indictments in this case – the initial, the first superseding, and the second superseding. (Docs. 1, 7, and 514). Each time, the Government waited until mere days before the expiration of the statute of limitations.

- The Government keeps changing theories of prosecution and each time it does, it causes the Defendants to expend vast amounts of time and large sums of money to adjust. Initially, the Government's theory was that the Defendants were spiking their products. The Government abandoned that theory and decided, even if the products were not spiked, they were not labelled properly. (Doc. 7). Then they abandoned

the misbranding theory and decided that the products were adulterated because Hi-Tech purportedly did not follow good manufacturing practices and used cheap Chinese components. This last change came after seven years of pushing a misbranding theory. (Doc. 517). With every change, the defense has to engage new experts or refocus old experts on completely different issues. This is incredibly costly. Counsel for Defendants have had to spend the last nine months changing direction to address the entirely new adulteration theory only to have the Government finally admit that it could not prove any of the steroid counts.

- In pursuit of its now dismissed steroid counts, the Government sent out unduly burdensome subpoenas to Hi-Tech that required Defendants to spend hundreds of thousands of dollars collecting records and conducting privilege reviews.

- The Government hid the testing that it did on Hi-Tech products purchased in 2019 and tested in 2020. Despite having a Rule 16 obligation to disclose those items in 2020, the Government chose not to inform the court or counsel of the testing. (Doc. 655). As a result of the Government's failure to disclose the information for five more years, Defendants were unable to test the products. (Doc. 570 at 6).

- The Government repeatedly and purposefully made incomplete expert disclosures that did not comply with Rule 16 and when asked to provide additional materials to the defense, the Government did not even respond to emails until the day before Daubert motions were due. (Docs. 580, 581, 582, and 583). The Government never provided the additional materials.

- The night before the pretrial conference, the Government disclosed a new expert that it had known about for at least seven years. (Doc. 669). As with the other experts, the expert disclosure is inadequate.

- The Government has failed to adequately or meaningfully comply with this Court's order to provide an exhibit list. While the Government has provided a list of exhibits, it has neither provided copies of the exhibits nor bates numbers from the discovery that would identify the documents contained in the exhibit list. In addition, several items on the exhibit list were not provided to the defense in discovery and still have not been provided to the defense.

- The Government gave last minute notice of its intent to introduce 404(b) evidence regarding a 2008 prosecution of Mr. Wheat and Hi-Tech. (Doc. 662). This old prosecution involves activities in Belize that now requires counsel to conduct an investigation in a foreign country in the weeks

6

before trial. The Belize case involved allegations of GMP violations because of unsanitary conditions at a manufacturing facility in Belize. This is now an entirely new theory that the defense has to address. In addition, the 404(b) notice indicates an intent to introduce emails, but does not identify the emails the Government intends to introduce.

In light of all of these actions, Defendants urge the Court to dismiss the case. "The remedy of dismissal of an indictment based on prosecutorial or Government misconduct is an extraordinary one and is generally applied to insure proper conduct by the Government and its agents." *United States v. Rodriguez*, 738 F.2d 13, 16 (1st Cir. 1984). Dismissal may be based on either the Fifth Amendment's Due Process Clause or on the Court's inherent supervisory powers. *United States v. Cederquist*, 641 F.2d 1347, 1352 (9th Cir. 1981).

> "A court may exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation." *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004); *see Fernandez*, 388 F.3d at 1239.[1] Dismissal on this basis requires "flagrant misbehavior" by the prosecutor and "substantial prejudice" to the defendant. *Kearns*, 5 F.3d at 1254;[2] *see Ross*, 372 F.3d at 1110; *Fernandez*, 388 F.3d at 1239; Fed. R. Crim. P. 52(a); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988) ("[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant."). Negligence or incompetence by

---

[1] *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004).

[2] *United Sates v. Kearns*, 5 F.3d 1251 (9th Cir. 1993).

the Government do not suffice. *See Fernandez*, 388 F.3d at 1239 (negligence); *Kearns*, 5 F.3d at 1254 (incompetence).

*United States v. Johnston*, 2006 U.S. Dist. LEXIS 3445 at *5 (D. Ariz. Jan. 27, 2006).

Defendants understand that dismissal is an extreme sanction that is rarely used. However, for eight years, the Government has repeatedly taken actions that are intended to either gain an unfair tactical advantage or inflict huge financial costs on Defendants. Repeatedly, when ordered to do something, the Government makes a half-hearted attempt at complying without actually complying. For example, the Government failed to provide adequate expert notices that were in compliance with Rule 16, provided one expert notice last week that was years late, and provided an exhibit list without copies of the exhibits or references to bates numbers in the discovery. Starting with the unjustified seizure of the DMAA and continuing through the harassing subpoenas, the Government has sought to inflict financial suffering on the Defendants.

Every time it changed its theory of prosecution, it caused serious hardship to the defense. Defense counsel has had to abandon years of work on theories and charges that are no longer part of the case after spending large sums on experts and investigation to respond to the charges. Then, counsel has had to start over to respond to new and different allegations that could have been presented years ago. Twice now, the Government has superseded the indictment to add charges only to drop the charges because it could not prove them. The Government

dropped the first set of charges after seven years and the second set of charges after nine months. When charges are so weak that the Government just gives up on them, the charges never should have been brought in the first place. United States Department of Justice, *Justice Manual*, Section 9-27.220

Over and over again, the Defendants have had to bear the burden of the Government's flagrant misbehavior. Defendants have been prejudiced financially and in their ability to prepare for trial. The Government should now bear the burden by suffering a dismissal.

WHEREFORE, Defendants respectfully request that the Court dismiss the case.

Respectfully submitted this 29th day of September, 2025.

*/s/ Brian Steel*
Brian Steel
Georgia Bar No. 677640
Colette Resnik Steel
Georgia Bar No. 601092
The Steel Law Firm, P.C.
1800 Peachtree Street, N.W., Ste. 300
Atlanta, Georgia 30309
404-605-0023
thesteellawfirm@msn.com
crsteel@msn.com
*Counsel for Defendant Jared Wheat*

*/s/ Arthur W. Leach*
Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
4080 McGinnis Ferry Road, Ste. 401
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

*/s/ Brian Mendelsohn*

Brian Mendelsohn
Georgia Bar No. 502031
Jeffrey L. Ertel
Georgia Bar No. 249966
The Mendelsohn Ertel Law Group LLC
101 Marietta Street, N.W.
Suite 3325
Atlanta, Georgia 30303
(404) 885-8878
Brian@tmelg.com
Jeffrey@tmelg.com
*Counsel for Defendant Jared Wheat*

*/s/ Jack Wenik*

Jack Wenik
One Gateway Center, 13th Floor
Newark, New Jersey 07102
973-639-5221
jwenik@ebglaw.com
Admitted Pro Hac Vice
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

*/s/ Bruce H. Morris*

Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
*Counsel for Defendant Jared Wheat*

*/s/ J. Stephen Salter*

J. Stephen Salter
8975 Pompano Way
Gulf Shores, Alabama 36542
205-585-1776
umstakwit@aol.com
Admitted Pro Hac Vice
*Counsel for Defendant Jared Wheat*