IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

JARED WHEAT,
JOHN BRANDON SCHOPP, AND
HI-TECH PHARMACEUTICALS, INC.

Criminal Action No.

1:17-CR-0229-AT-CMS

## United States's Motion for Reconsideration of Order on Motion in Limine to Preclude Any Evidence Relating to the Incomplete GMP Audit by NSF International

The United States of America, by Theodore S. Hertzberg, United States

Attorney, and Nathan P. Kitchens and Kelly K. Connors, Assistant United States

Attorneys for the Northern District of Georgia, files this motion for

reconsideration of the Court's order granting Defendants Jared Wheat's and Hi-

Tech Pharmaceuticals, Inc.'s ("Hi-Tech's") motion in limine to preclude any

evidence relating to the incomplete GMP audit conducted by NSF International

(Doc. 715).

The government recognizes that a motion for reconsideration should be filed

only when "absolutely necessary," N.D. Ga. Local Rule 7.2(E), and should only

be granted when there is (1) newly discovered evidence, (2) an intervening

development or change in controlling law, or (3) "a need to correct a clear error

of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003); *see also Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012). The government respectfully submits this motion given both the crucial importance of this evidence in proving the falsity at issue in the wire fraud counts and the clear error of fact based on the Defendants' mischaracterization of the NSF audit process. The Court's order is premised on the mistaken belief, based on allegations in Defendants' motion that are contradicted by the evidence, that "the ultimate, incomplete result of the [NSF] audit was attributable to NSF's failure to review the volume of documentation provided to and kept by NSF's own employee—not any wrongdoing by Hi-Tech." (Doc. 715 at 5). But NSF *did* consider Hi-Tech's documentation submitted in response to the corrective action reports and found that more than 40 deficiencies remained, which Hi-Tech never corrected. There is accordingly no evidence supporting Hi-Tech's assertion that the audit was "incomplete" due to NSF's "negligence."

Leaving aside the clear error based on Hi-Tech's representations contrary to the evidence, the NSF audit process is of vital importance to the wire fraud counts for three reasons. First, the government contends that the Defendants doctored the NSF audit report to create the false Pharmatech audit report sent to customers (including the same format; same audit template number; overlapping

2

audit dates; and, in some cases, same Hi-Tech-specific explanatory notes)—it is difficult for the government to prove that a party doctored a document without being able to admit the document that was allegedly doctored. Second, the Defendants made representations to customers about the status of NSF's certification of Hi-Tech, which the government intends to prove are false. The government cannot prove the falsity of the Defendants' misrepresentations to customers about the NSF audit without discussing the NSF audit. Finally, the government intends to prove that Pharmatech did not conduct an audit of Hi-Tech on December 1-3, 2010 because Bill Kracht, the NSF auditor, did not see another audit team at Hi-Tech when he conducted the NSF audit on November 30-December 2, 2010. Barring testimony from the NSF auditor would prevent the government from providing important evidence of the nonexistence of the Pharmatech audit.

Accordingly, the Court should grant this motion for reconsideration of its order based on the Defendants' erroneous portrayal of the NSF audit and allow the government to present evidence critical to proving the falsity at issue in the wire fraud counts. If the Court does not grant this motion for reconsideration today, the government requests argument on this motion as the first order of business tomorrow morning.

**Factual Background**

During oral argument at the pretrial conference, the government outlined the sequence of events at the conclusion of the NSF audit process. (Excerpt from Sept. 17, 2025 Pretrial Conference Transcript, attached as Exhibit A, at 107–12). To aid the Court, the government will provide a comprehensive timeline of the NSF audit process following the completion of the December audit.

On December 8, 2010, NSF sent Hi-Tech the audit report and a Corrective Action Report listing 75 pending issues that needed to be corrected. (*See* Dec. 8, 2010 Schopp email, attached as Exhibit B; Dec. 8, 2010 Brandon Schopp email attached as Exhibit C). On January 5, 2011, Defendant John Brandon Schopp emailed Hi-Tech's first set of corrective action responses to Christie Miller at NSF. (*See* Jan. 5, 2011 Schopp email, attached as Exhibit D).

Mollie Kober would testify that following Hi-Tech's first submission, she reviewed Hi-Tech's documentation on behalf of NSF and determined that 26 issues had been addressed, leaving 49 issues remaining for Hi-Tech to remedy. (*See* Mollie Kober Memorandum of Interview, August 6, 2025, attached as Exhibit E, at 2). On January 14, 2011, NSF emailed Hi-Tech a revised Corrective Action Report reflecting 49 issues that needed correction. (*See* Jan. 14, 2011 email, attached as Exhibit F). NSF directed Hi-Tech to "submit your response directly

4

using the NSF Online system" within 30 days. (*Id.* at 1). On February 1, 2011,

Schopp emailed Christie Miller at NSF to ask for "an update on our audit reply,"

and Miller responded that "your corrective action responses have been reviewed

and the email notification was sent out by the system." (*See* Feb. 3, 2011 email,

attached as Exhibit G). Miller also attached "the most recent corrective action

report," which again reflected 49 deficiencies that needed to be resolved. (*Id.*).

There is no record of Hi-Tech providing any response to NSF for three months.

On May 4, 2011, Lindsay Bartlein at NSF emailed Schopp noting that Christie

Miller was on vacation and asked if Hi-Tech wanted to schedule an audit

because it was "actually due for a re-audit in May." (Doc. 615-1). Schopp

responded that Hi-Tech had "not received our official certification from our

initial audit" and asked for "an update on our current status for certification."

(*Id.*) Bartlein responded by noting that Hi-Tech could log into its NSF Online

account at any time, which reflected that of the "75 initial CARS, only 26 have

been approved by our reviewer. 49 of the CARS require additional information

before they can be approved." (*Id.*) Bartlein further explained that if Hi-Tech

addressed the 49 remaining issues and have them "approved in the next week, then we can put you into listing." (*Id.*)

On May 10, 2011, Schopp emailed Bartlein and Miller noting that Hi-Tech "would like to respond to the last of the open audit items, but the info that we will be responding with is very detailed and large in size. Is there an address and contact person that we could send the responses to via Fed Ex?" (*See* May 11, 2011 email chain, attached as Exhibit H). After Miller responded on May 11 that the "information will need to be entered into the system," Jared Wheat responded, "it is several hundred pages!!!!" (*Id.*) Following Wheat's response, Miller provided her mailing address on May 11, 2011, and informed Hi-Tech that it could mail the corrective action responses to her. (*Id.*)

On May 19, 2011, Bartlein emailed Mollie Kober and informed her that Christie Miller no longer worked at NSF as of May 15, 2011. (Doc. 615-2). Bartlein stated that there was a "HUGE stack of CARS on her desk that [Hi-Tech] mailed her." (*Id.*) Bartlein scanned several hundred pages of Hi-Tech's documents provided in response to Miller's May 11, 2011 email and attached them to the email to Kober. (*Id.*) Kober would testify that she reviewed the paper records provided by Hi-Tech and, after her review, determined that Hi-Tech still had 43 corrective action items outstanding. (Exhibit E at 2). On May 28, 2011, roughly

6

two weeks after Miller provided her mailing address for Hi-Tech to mail its responses in paper form, NSF emailed Hi-Tech a revised Corrective Action Report reflecting that 43 corrective action items remained pending. (May 28, 2011 email, attached as Exhibit I). There is no record of any Hi-Tech response to NSF's final Corrective Action Report or any further communication with NSF.

In sum, the evidence reflects that after NSF auditor Bill Kracht identified 75 deficiencies based on his on-site inspection of Hi-Tech in December 2010, Hi-Tech provided two corrective action responses to NSF: a January 5, 2011 email submission and a paper submission in May 2011. Following the January 5, 2011 submission by Hi-Tech, NSF informed Hi-Tech that there were 49 deficiencies left to be addressed. Although the exact date that Hi-Tech mailed its corrective action responses in May 2011 is unknown, Hi-Tech did not have a mailing address to send paper responses until Miller's email on May 11, 2011. Following Kober's review of the paper responses in May 2011, NSF informed Hi-Tech on May 28, 2011 that 43 deficiencies remained. Hi-Tech never responded.

## Procedural History

On August 18, 2025, Hi-Tech filed its motion to exclude evidence related to the NSF audit report. (Doc. 615). After raising its primary argument that Hi-Tech's FDA inspection history is more relevant evidence, Hi-Tech's secondary

argument was that NSF failed to inform it of the deficiencies in its corrective action responses and that its package of documents submitted to address these issues were "left sitting on the departed employees' desk." (*Id.* at 6).[1] In response, the government noted that "based on the evidence submitted by Hi-Tech" in response to the NSF Corrective Action Report, "NSF found that Hi-Tech had not cured a large number of deficiencies identified by NSF." (Doc. 640 at 9).

At the pretrial conference on September 17, 2025, the parties presented oral argument on the motion. (Exhibit A at 104–22). The Defendants argued that presentation of evidence about the NSF audit report would be unfair because Hi-Tech submitted a corrective action that was "approved" by NSF. (*Id.* at 105:4–6). The Defendants suggested that its corrective action response "had been submitted to NSF" and "is approved—in other words, it is fixed—it is sitting on somebody's desk." (*Id.* at 105:14–20). The Defendants contended that "because of

---

[1] The Defendants also argued that Hi-Tech "disengaged NSF" because it realized "during this same period of time" in May 2011 that NSF prohibited substances that were not prohibited by the FDA. (Doc. 615-3 at 73). The Order mentions but, with good reason, does not credit the Defendants' argument. (Doc. 715 at 3). Based on the evidence Defendants cite in support of this contention, NSF provided the list of banned ingredients to Schopp on July 20, 2010, (Doc. 615-3 at 3), roughly two months before Hi-Tech decided to proceed with Kracht's inspection and seven months before Schopp told NSF on May 10, 2011, that "[w]e are very anxious to clos[e] out the audit and mov[e] forward." (Exhibit H).

what NSF did by, you know, an employee leaving and the 49 CARS being left on somebody's desk, it never got completed. It never got updated." (*Id.* at 105:25–106:2). The Defendants acknowledged, however, that "if we had a report after those CARS had been considered, we would be in a worse position. But the report that they want to tender saying we're not GMP compliant . . . when, in fact, NSF has accepted it and said that we are now approved with regard to that problem, it is just—it is confusing." (*Id.* at 106:15–20). The Defendants then argued that the "gold standard of evidence [is] FDA inspections. That really ought to be what is submitted." (*Id.* at 106:21–24).[2]

In response, the government provided a timeline of the NSF audit process. (*Id.* at 107:19–24). The government summarized that after the December 2010 audit report, Hi-Tech provided a correction action response in January 2011, and NSF determined "that there were 49 deficiencies remaining for Hi-Tech to cure" following its review of Hi-Tech's response. (*Id.* at 108:17–25). The government further noted that "Hi-Tech at that point doesn't send an immediate response. Things sit." (*Id.* at 109:1–3). The government detailed the May 4, 2011 email from

---

[2] The Defendants have since changed their position on FDA inspection records and submit that this evidence should be excluded as well. (Doc. 678 at 13–14).

9

Bartlein noting that 49 deficiencies remained to be cured, the May 19, 2011 email attaching the final responses provided by Hi-Tech, and the May 28, 2011 email from NSF attaching a revised Corrective Action Report showing that Hi-Tech's paper materials cured only 6 of the 49 deficiencies. (*Id.* at 109:4–110:21). The government noted that "[t]here was never any further follow-up from Hi-Tech at that point." (*Id.* at 110:22–23). The government further explained that its theory of the case is that the Defendants "doctor[ed] a NSF audit report" by switching NSF with Pharmatech as the identified auditor at the top right and changing the 75 issues identified as "Not Approved" by NSF to "Approved" by Pharmatech, and that "the only way to prove" that falsity was "to show the underlying source material" to establish "how things were doctored and changed by Hi-Tech." (*Id.* at 118:17–119:1; *see also id.* at 113:8–114:3). The government noted that the NSF audit report is thus the "best evidence that we have of falsity in this case" and that exclusion of such evidence "would essentially gut the Government's ability to prove falsity." (*Id.* at 114:4–17). The government also argued that to the extent

there was any concern about unfair prejudice under Rule 403, "that could be addressed through obviously a limiting instruction." (*Id.* at 114:9–12).

On October 18, 2025, the Court issued its order excluding any evidence relating to the NSF audit. (Doc. 715). The Order does not mention any evidence or argument presented at the pretrial conference.

## Argument

### 1. The Order must be reconsidered to correct the clear factual error regarding whether NSF examined Hi-Tech's corrective action responses.

The Court's order is premised on the Defendants' assertion that NSF did not review Hi-Tech's corrective action responses, which the Court concluded rendered its audit report unreliable. (Doc. 715 at 5–6). But Defendants' assertion is contradicted by the evidence and testimony that would be presented at trial. When this clear error of fact is corrected, there is no basis to find that NSF was negligent or that, as a result, its reliability as an auditor is undermined.

The Court's order repeatedly cites NSF's "negligence" as the basis for its opinion that the Hi-Tech audit report is unreliable. (*Id.* at 6). The Order states that "[t]he central question for the Court, then, is whether evidence related to the incomplete NSF audit, **which neglected to examine the significant volume of documentation and information furnished by Defendants**, is so prejudicial as to *substantially* outweigh its probative effect." (*Id.* at 4) (emphasis added). The

11

Order asserts that "[a]n internal NSF email from May 2011 reflects that NSF received the information, **but neglected to process the information and documentation for several months due to an NSF employee's departure and prior failure to disseminate the information."[3]** (*Id.* at 2) (emphasis added). The Order expresses concern that an "unfair conclusion" about Hi-Tech's GMP compliance could be drawn from the audit "given the ultimate, incomplete result of the audit was attributable to **NSF's failure to review the volume of documentation provided to and kept by NSF's own employee**." (*Id.* at 5) (emphasis added). The Order further states that "Hi-Tech properly submitted its corrective action reports to NSF in the wake of its initial December 2010 audit . . . **but was left adrift by [NSF's] negligence**," and that "the reason Hi-Tech had not 'corrected all of their audit variances' was, in fact, that **NSF had not properly processed the information that Hi-Tech *had* provided.**" (*Id.*) (emphasis added). The Order thus concludes that "NSF's complete failure to properly manage Hi-

---

[3] The Order does not cite the basis for this finding, but it seems to be based on Hi-Tech's suggestion that its paper responses to the "departed" NSF employee, Christie Miller, were "left sitting" on her desk. (Doc. 615 at 6). However, the record reflects that Hi-Tech did not have a mailing address to send its paper responses until Miller emailed Hi-Tech on May 11, 2011, (Exhibit H), that Miller left NSF on May 15, 2011, (Doc. 615-2), and that Bartlein scanned the paper responses and sent them to Kober for her review on May 19, 2011, (*id.*). In short, the paper responses mailed by Hi-Tech were sent to Kober, NSF's corrective action reviewer, within a week of their receipt by NSF. NSF then sent a revised Corrective Action Report to Hi-Tech nine days later. (Exhibit I).

Tech's audit process not only created the circumstances for the project to be abandoned, but in fact calls into question NSF's diligence as an auditor writ large in this matter, rendering questionable the reliability of its entire audit of Hi-Tech here." (*Id.*)

These findings, which are based solely on citations to the Defendants' motion, are demonstrably erroneous. As noted above, Hi-Tech submitted two sets of corrective action responses to NSF, both of which NSF promptly considered and found insufficient to cure dozens of deficiencies identified in the original December 2010 audit report. After Hi-Tech submitted its corrective action responses on January 5, 2011, (Exhibit D), NSF reviewed the material and issued a revised Corrective Action Report nine days later finding that 49 deficiencies remained to be cured, (Exhibits E & F). The record shows the absence of any response or communication from Hi-Tech to NSF between February 1, 2011 and May 4, 2011. After Hi-Tech mailed its second set of corrective action responses between May 11 and May 19, 2011, (Exhibit H; Doc. 615-2), NSF reviewed the additional hundreds of pages of documentation and issued a revised Corrective Action Report on May 28, 2011, finding that 43 deficiencies were left to be cured, (Exhibits E & I). Hi-Tech never responded to the revised Corrective Action Report. Accordingly, the factual underpinning of the Order's conclusion about the reliability of the NSF audit, based on the Defendants' misleading and

unsupported assertions about NSF's purported negligence, is contradicted by the evidence itself.

The government recognizes that the Court did not have the benefit of seeing the actual email records before issuing the Order, and the Order does not reflect whether it considered the government's timeline presented at the pretrial conference that attempted to correct the record. But the Defendants knew the sequence of events, based on their own records produced in discovery, and misrepresented it to the Court, which the Order then adopted. Defense counsel of course must zealously represent their clients, but they also owe a duty of candor to the Court. Ga. R. Prof. Conduct 3.3. The Defendants' false depiction of NSF's review of its corrective action responses fell short of this standard, and the Order cannot stand based on factual findings contradicted by the evidence.[4]

---

[4] The Order's harsh assessment of NSF's performance based on the Defendants' misleading presentation of the facts is also unfair, and risks reputational harm, to NSF itself. Defendant Wheat made multiple representations to clients about NSF's audit, and customers asked about proof of NSF certification, because NSF is one of the most reputable, well-known audit companies in the field. Nothing in the record supports a finding of NSF's "negligence" or "calls into question NSF's diligence as an auditor writ large in this matter." (Doc. 715 at 5–6).

2. **Correcting the clear factual error regarding whether NSF examined Hi-Tech's corrective action responses also addresses the Order's concern with "significant delay."**

Because the Order posits, based on Hi-Tech's misrepresentation of the factual record, that NSF was "negligen[t] in handling Hi-Tech's documents and audit," it expresses concern about undue prejudice from the "significant delay" at trial in exploring the "circumstances at NSF that caused its negligence." (Doc. 715 at 6). The Order deems such information about the causes of NSF's negligence to be "crucial rebuttal evidence," which raises the "distinct possibility of a mini trial over the validity of the NSF audit management under these circumstances." (*Id.*) As noted above, the premise that NSF was negligent based on its purported failure to review Hi-Tech's corrective action responses is clearly erroneous. The concern about significant delay is thus erroneous as well.

The factual record, when corrected, does not support the need for rebuttal evidence to explore "the circumstances at NSF that caused its negligence" because there is no evidence of any negligence by NSF. Leaving aside the absence of facts supporting NSF's negligence, the Order does not explain the basis for its concern about a "mini trial over the validity of the NSF audit management," which was never raised as a concern or suggestion by the Defendants. Neither the Defendants nor the Order identify any evidence that would be presented about the "circumstances at NSF that caused its negligence," or how the scope of such evidence would be so vast as to raise a "distinct possibility of a mini trial." The appropriate way for the Defendants to challenge the validity of the audit is through vigorous cross-examination of Bill Kracht and

Mollie Kober, not the wholesale exclusion of their testimony and any evidence or mention of NSF's audit.

### 3. Evidence relating to the NSF audit is critical to the government's ability to prove the falsity of the Pharmatech audit report.

The Order dismisses the NSF audit report as "an essentially collateral matter" and suggests that there is an "extensive body of alternative evidence the Government has indicated it is prepared to tender to show that Defendants caused fraudulent audit reports to be sent to customers, as alleged in the indictment." (Doc. 715 at 6). The government does not know what "extensive body of alternative evidence" the Order has in mind, but the government did not indicate that such existed—to the contrary, the government repeatedly stated that such evidence is vital to proving the falsity of the GMP audit report and GMP certificates identified in the indictment based on its own review of its evidence. (Exhibit A at 113:8–114:17; 118:17–119:1; Doc. 640 at 7–10).[5] The government explained at the pretrial conference that it is very difficult to prove that the Defendants doctored an audit report without admitting the source material that was doctored. (Exhibit A at 118:17–119:1). Although the Order does

---

[5] Indeed, the government's first two planned witnesses were Bill Kracht and Mollie Kober, and it is now rescheduling witnesses to give the Court an opportunity to consider this motion for reconsideration.

not cite or mention the parties' argument in the pretrial conference, the government will assume that the Court considered such argument and will focus on two points of which the Court is likely unaware.

First, in addition to providing false Pharmatech audit reports and GMP certificates to customers, the Defendants made false or misleading representations about the NSF audit itself, and the government can only prove the falsity of such statements to customers by discussing the NSF audit. The indictment alleges not only that the Defendants delivered false and misleading documents to customers, but also that the Defendants sent false "representations regarding the regulatory compliance of Hi-Tech and its products." (Doc. 514 ¶ 9). On several occasions, Wheat sent false Pharmatech audit reports to customers and, in the same emails, made representations about the status of the NSF audit, falsely claiming in March 2011 that Hi-Tech would be certified by NSF within two weeks although he knew that Hi-Tech had dozens of deficiencies left to address. (*See, e.g.*, Doc. 658-2). Hi-Tech sales staff also prepared and sent marketing materials for customers falsely advertising that the company was "NSF compliant." (*See, e.g.*, Feb. 2, 2011 draft letter and Mar. 26, 2012 email, attached as Exhibit J). Accordingly, the Defendants' false representations to customers about their NSF audit certification status are themselves false

statements at issue in the wire fraud counts, and the government can only argue these false statements by discussing the NSF audit. The Defendants have not argued or suggested that there is any legal basis to effectively grant them immunity from their false statements to customers about NSF by excluding any evidence of their actual NSF certification status.

Second, Bill Kracht is a key witness to prove that no Pharmatech audit was conducted in December 2010 because he was inspecting Hi-Tech on behalf of NSF at the same time. The false Pharmatech audit report claims that its audit was conducted between Dec. 1, 2010 and Dec. 3, 2010, (Doc. 640-2 at 2), which largely overlaps with the days that Kracht conducted the on-site audit on behalf of NSF, (Doc. 640-1 at 2). Kracht is expected to testify that when he was on site at Hi-Tech, he did not notice any other third-party audit team and, if there had been, he would have noted it in his audit report. (*See* Bill Kracht Memorandum of Interview, February 7, 2025, attached as Exhibit K, at 3). If the government is barred from mentioning the NSF audit, Kracht cannot effectively testify regarding the nonexistence of Pharmatech's audit.

**4. The Order's proposal regarding a blank NSF audit template is not feasible, and the Order did not consider whether a limiting instruction would cure any risk of unfair prejudice.**

While the Order excludes any mention of NSF conducting an audit at Hi-Tech, it recognizes the "potential relevance of NSF's established audit process" and allows the "limited admission" of "a *blank* version of the NSF audit form." (Doc. 715 at 7). The government appreciates the Order's acknowledgment, but the problem is that it does not believe that a blank version of the NSF audit form exists. Based on the evidence, Hi-Tech manipulated the completed NSF audit report completed by Bill Kracht by swapping out "NSF" for "Pharmatech" in the header and changing categories marked "Not Acceptable" to "Acceptable." (Exhibit A at 118:17–119:1). Accordingly, the government is not aware of the existence of a blank NSF audit form. The Defendants' reply brief also highlights the inadequacy of this solution. The Defendants argued that this is "not a copyright case" and the fact the NSF audit form was a "template" for the Pharmatech report "would have absolutely no bearing on whether the PharmaTech report contained misrepresentations." (Doc. 658 at 3–4). The admission of a blank audit form, even if one could be located, would not capture the thrust of the Defendants' misrepresentations in changing the assessments from "Not Acceptable" to "Acceptable" in dozens of categories.

Although the Order's proposal may not be workable, the government
suggested a well-recognized remedy for concerns about undue prejudice not
considered in the Order: admitting the evidence with a limiting instruction to the
jury. (Exhibit A at 114:9–12; Doc. 640 at 12). The Eleventh Circuit recognizes that
a "limiting instruction in the context of Rule 403 evidence may mitigate the risk
of unfair harm." *United States v. Macrina*, 109 F.4th 1341, 1350 (11th Cir. 2024)
(citing *Samia v. United States*, 599 U.S. 635, 646 (2023) ("Evidence at trial is often
admitted for a limited purpose, accompanied by a limiting instruction. And our
legal system presumes that jurors will attend closely the particular language of
such instructions in a criminal case and strive to understand, make sense of, and
follow them.")). To the extent the Court believes that there is a risk of unfair
prejudice from the Defendants' choice not to further pursue NSF certification, the
Court could provide a limiting instruction that the NSF audit documentation
could not be considered as evidence of Hi-Tech's non-compliance with GMP
regulations.

## CONCLUSION

As it stands, the Order rests on clearly erroneous findings about the reliability
of NSF's audit report based on the Defendants' mischaracterization of the record.
The Order should be corrected to align with the facts and thereby permit the jury

to make a fair assessment of the truth or falsity of the Pharmatech audit report and the Defendants' representations about the NSF audit, which lie at the core of the wire fraud charges. For the foregoing reasons, and the reasons raised in its response to the motion in limine (Doc. 640) and at the pretrial conference (Exhibit A at 108–22), the United States respectfully requests that the Court grant its motion for reconsideration of the October 18, 2025 order. (Doc. 715).

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

/s/ NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov

/s/ KELLY K. CONNORS
*Assistant United States Attorney*
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov

21

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

October 19, 2025

/s/ NATHAN P. KITCHENS

NATHAN P. KITCHENS
*Assistant United States Attorney*