**LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY**



# FDA Office of Criminal Investigations
Case Management and Administrative Resource System (CMARS)
Generated On: 10/15/2025 1:31 PM EDT

## MEMORANDUM OF INTERVIEW (MOI)

| | |
|---|---|
| **Case #:** | 2011-NST-715-0588 (J) |
| **Case Title:** | HI-TECH PHARMACEUTICALS INC |
| **Case Agent:** | Kriplean, Brian |

| | | | |
|---|---|---|---|
| **Document Number:** | 6893112 | | |
| **Submitted By:** | Kriplean, Brian | **Submitted Date:** | 10/14/2025 |
| **Approved By:** | Mccoy, Kelly | **Approved Date:** | 10/15/2025 |

| | |
|---|---|
| **Person Interviewed:** | Ingrid Zambrana |
| **Date and Time of Interview:** | 10/08/2025 01:03 PM |
| **Place of Interview:** | Atlanta, Georiga |
| **Interviewed By:** | Assistant United States Attorney Nathan Kitchens and Special Agent Brian Kriplean |
| **Other Persons Present:** | AUSA Kelly Connors, OCC Attorney Kyrsten Melander (via Teams) |

**Interview Narrative:**

On October 8, 2025, Assistant United States Attorney (AUSA) Nathan Kitchens and Special Agent (SA) Brian Kriplean interviewed Ingrid Zambrana at the United States Attorney's Office in Atlanta, Georgia. Also present during the interview were AUSA Kelly Connors and Office of Chief Counsel (OCC) Attorney Kyrsten Melander (via Teams).  Zambrana provided the following information freely and voluntarily.

Zambrana stated that she has a Bachelor of Science degree in Biochemistry.  Following graduation, Zambrana has been working for the Food and Drug Administration for twenty-five years.  Zambrana stated that she worked as a Field Investigator in the San Francisco and Atlanta District Offices (ADO) for a total of twelve years.  Zambrana stated she served as ADO's Deputy District Director for 2.5 years prior to her current role of District Director.

Zambrana stated that she currently oversees approximately 30 Human Foods Inspectorates that cover

JENCKS-009468

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY

Georgia, North Carolina, South Carolina, Virginia, and West Virginia. Zambrana stated that her office also works with other districts, such as Pennsylvania, when firms have locations in multiple districts.

Zambrana stated that the ADO conducts an average of 500 inspections annually. Zambrana stated that the ADO does not contract with states to conduct inspections related to dietary supplements.

Zambrana stated that inspections are assigned and guided by the FDA's Operations Manual and compliance program guidance. Zambrana stated that the scope of an inspection is determined by several factors, including compliance program guidance, special assignments made by the specific program, consumer complaints, the firm's volume, etc. Zambrana stated that the investigators assigned to an inspection depend on the expertise needed as well as risk factors associated with the firm's history of compliance and cooperation, or lack thereof.

Zambrana stated that the ADO does some pre-work of a firm prior to physically performing the inspections. Such pre-work includes looking at the firm's inspection history. Zambrana stated that resources are deployed to the firm based on the scope, complexity, and safety of the inspection. Zambrana stated that an average of three inspectors participates in an inspection.

Zambrana stated that once investigators arrive on site, they display their credentials and request to meet with the firm's most responsible person. The investigators issue a Form 482 (notice of inspection) and request records. The investigators, accompanied by the firm's representative, also conduct a walk-through of the process flow relative to the scope of the inspection. The investigators also verbally communicate their daily observations with the firm, conduct interviews, and request additional documents as necessary. The investigators verbally summarize their observations daily with the firm and give the firm opportunities to respond or provide additional personnel to assist with the observation responses if needed. Once the inspection is completed, the investigators issue a Form 483. The investigators triage discussion items verbally with the firm (which are also documented in the inspection report), request post-inspection responses, and give guidance on industry standards and educational outreach on new regulations.

Zambrana stated that post inspection, the investigators consolidate their evidence, records and samples collected. Samples collected are sent to one of the FDA's laboratories for analysis. The investigators prepare an inspection report which is uploaded into the FDA's electronic system. The report is then reviewed at a supervisor's level based upon the classification recommended by the district office. The classification options include no action indicated (NAI), voluntary action indicated (VAI) and official action indicated (OAI). NAI classifications remain at the district level. VAI and OAI classifications are elevated to the compliance branch, which determines final action.

Zambrana stated that a firm is provided the opportunity to respond to a Form 483. The FDA generally considers responses from firms if they are received within the required response timeframe, generally ten days. The FDA acknowledges receipt of the response. The inspectors review the response and determine if the response addresses the issues noted.

Zambrana stated that OAI classifications can be handled by the FDA through administrative actions and/or enforcement actions. OAI classifications generally start with voluntary compliance options such as recalls, the firm fixing the problems, etc. Zambrana stated that more aggressive violations are handled at the program compliance level. The program compliance level may issue warning letters or

JENCKS-009469

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY

utilize other enforcement tools.

Zambrana stated that there are circumstances that require scientific review at the center level. Zambrana stated that this may not be reflected in a Form 483; however, it is documented in the inspection report.  Zambrana stated that seizures of product are also not documented in a Form 483.

Zambrana stated that the FDA restructured the district offices into center categories.  Zambrana stated that prior to October 1, 2024, the District Director had authority to provide input on inspection reports and associated actions.  Under the reorganization, the district directors are assigned to a specific program and only handle inspections within their program.

Zambrana stated that she is familiar with Hi-Tech Pharmaceuticals Inc. (Hi-Tech).  Zambrana stated that Hi-Tech is a firm that has a history of non-compliance and lack of cooperation.  Zambrana stated that her district office has spent a lot of time inspecting Hi-Tech and deploying resources to try and find where their manufacturing is occurring.  Zambrana stated that the inspections of Hi-Tech have not been driven by the existing consent decree.  Zambrana stated that the FDA had the authority to inspect Hi-Tech prior to the consent decree.  Zambrana stated that inspections of Hi-Tech have also been driven by program-specific issues regarding particular products and/or ingredients.

Zambrana stated that the district office only handles civil/regulatory inspections and is completely separate from the Office of Criminal Investigations (OCI).  Zambrana stated that anything suspected of being criminal is referred to OCI.  Zambrana stated that the district office is never directed by OCI to conduct inspections.  Zambrana stated that the regulatory process is generally conducted before making any referral to OCI.

Zambrana stated that there were times when the district office had to delay inspections of Hi-Tech due to ongoing civil litigation, such as the DMAA litigation.

Zambrana stated she was aware of Hi-Tech's consent decree, which prohibits Hi-Tech from doing certain actions.  Zambrana stated that it was unusual to have a consent decree last twenty years.

Zambrana stated that she has never testified before.

Zambrana stated that new regulations are publicly available and are discussed during inspections. Zambrana stated that discussing new regulations with firms is part of the FDA's outreach for investigators to educate firms during the close-out process.  Zambrana stated that new regulation phase-in timelines usually consider a firm's size, number of employees, and volume of product as examples.

Zambrana stated that the original Form 483s issued are provided to the firm, and a copy is placed in the inspection report.

Zambrana stated that it is standard practice to take a corporate approach to multi-location firms. Zambrana stated that by doing so, they can inspect all locations at or near the same time.

Zambrana stated that the 2013 Hi-Tech inspection was a compliance program inspection that was limited in scope to that compliance program.  Zambrana stated that the source of the compliance

JENCKS-009470

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY

program number refers to the related regulation.  Zambrana stated that the compliance program number gives guidance on what to look for to determine firm compliance.

Zambrana stated that the 2019/2020 Hi-Tech inspection was the first inspection at Hi-Tech that focused comprehensively on GMP compliance.
Zambrana stated that the FDA does not issue GMP certifications.

Zambrana stated that the firm gets a copy of the inspection report once the classification is finalized.

The interview concluded at 3:00pm.

## Attachments

**File Name**                                   **Description**

--                                              --